## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KELLY SULLIVAN,

       Plaintiff,

       v.

THOMAS G. GARDINER, P.C. d/b/a
GARDINER KOCH WEISBERG &
WRONA, and VINCENT LAVIERI,

       Defendants.

Case No. 19-cv-04637

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff Kelly Sullivan sues Defendant law firm Thomas G. Gardiner, P.C. d/b/a Gardiner Koch Weisberg & Wrona, and Vincent Lavieri, one of the firm's attorneys, under the Fair Debt Collection Practices Act (FDCPA),15 U.S.C. § 1692 *et seq*. Plaintiff claims that Defendants unlawfully attempted to collect debts on behalf of the Wolcott Diversey Condominium Association (Wolcott), to which she belongs. Plaintiff's amended complaint claims Defendants improperly attempted to collect three charges for Sullivan's alleged violations of Wolcott's Declaration of Condominium Ownership (the Wolcott Declaration). Defendants move to dismiss [22]. For the following reasons, this Court grants in part and denies in part Defendants' motion.

## I.     The Complaint's Allegations

Plaintiff is a member of Wolcott, a condominium association.  [21] at ¶ 7.
Plaintiff claims that Defendants, acting on behalf of Wolcott, attempted to collect
payments from Plaintiff for various amounts improperly charged to Plaintiff's Wolcott
resident ledger.  *Id.* at ¶ 14.  Plaintiff sues under the FDCPA, claiming that
Defendants misrepresented debts owed by Plaintiff to Wolcott (Count I), and that
Defendants attempted to collect unauthorized debts (Count II).  Plaintiff seeks
redress for three categories of "debt," as set forth fully below.  *Id.*

### A.     Post-Judgment Attorney's Fees

In 2017, Defendants, on behalf of Wolcott, filed a lawsuit against Plaintiff in
the Circuit Court of Cook County (the First Lawsuit) to collect money Plaintiff owed
Wolcott.  *Id.* at ¶¶ 13, 16.  The court entered judgment in favor of Wolcott and against
Sullivan on December 13, 2017; the judgment included an award of attorney's fees
and costs.  *Id.* at ¶ 17.  Plaintiff subsequently satisfied the judgment amount, and
Defendants filed a satisfaction release of judgment in February 2018.  *Id.* at ¶ 19.

One month later, Defendants filed a petition for post-judgment attorney's fees
against Plaintiff, seeking amounts they incurred prior to February 2018 for activities
such as correspondence with Plaintiff regarding attempts to obtain payment of the
judgment.  *Id.* at ¶ 20.  In May 2018, Defendants obtained a court order awarding
$1,762.55 in post-judgment attorney's fees, an amount Wolcott subsequently added
to Plaintiff's ledger.  *Id.* at ¶ 22.  Plaintiff asserts that the satisfaction and release of

2

judgment from the First Lawsuit bars Defendants' attempts to collect the post-judgment attorney's fees. *Id.* at ¶¶ 23–24.

### B. The Fines

In May 2018, Plaintiff received nine "notice of violation" letters from Wolcott. *Id.* at ¶ 26. Each of the letters charged Plaintiff with interfering with Wolcott's exclusive functions relating to the administration and operation of common elements and landscaping by watering plants in the common areas. *Id.* at ¶¶ 26–27.

Wolcott held a hearing regarding Plaintiff's alleged violations sometime after it issued the notice of violation letters; at that hearing, Wolcott assessed Plaintiff a fine for each violation, totaling $1,500.00. *Id.* at ¶¶ 32–33. Plaintiff claims the fines are invalid and illegal because, among other things, neither the Wolcott Declaration nor bylaws prohibit the conduct forming the basis of the violations. *Id.* at ¶ 35.

### C. 2018 Attorney's Fees

Plaintiff also contests Defendants' attempts to collect a total of $8,642.47 in additional fees. Plaintiff alleges that Defendants incurred various legal fees on behalf of Wolcott and charged these fees directly to Plaintiff without a court order and without following Wolcott's procedure. *Id.* at ¶ 38. Plaintiff's ledger describes these fees as follows:

(1) "07/03/2018 legal-legal GKWW Inv # 134633";

(2) "07/05/2018 legal-legal GKWW Inv # 134667 (Appeal-Response re late notice of appeal)";

(3) "08/03/2018 legal-legal GWW Inv # 135366 (Appeal-Response re: motion to reconsider)";

(4) "08/03/2018 legal-legal GKWW Inv # 135368";

(5) "09/05/2018 legal-Legal (Enforcement of Declaration and Rules, Invoice 136010)";

(6) "09/05/2018 legal-Legal (Collection, Invoice 136011)";

(7) "10/02/2018 legal-Legal (Appeal, Invoice 136669)";

(8) "10/02/2018 legal-Legal (Collection, Invoice 136671)'"

(9) "01/11/2019 legal-legal GKW&W inv 138447";

(10) "01/11/2019 legal-legal Certified Mailing regarding complaint"

[1-4] at 4.

## II.    Legal Standard

Defendants move to dismiss under both Federal Civil Procedure 12(b)(1) and Rule 12(b)(6).  Analyzing a motion to dismiss under Rule 12(b)(1) requires this Court to construe Plaintiff's complaint in the light most favorable to Plaintiff, accept as true all well-plead facts, and draw reasonable inferences in her favor.  *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999).  Courts evaluating Rule 12(b)(1) motions may look beyond the complaint to consider whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists.  *Silha*, 807 F.3d at 173 (When reviewing a challenge to subject matter jurisdiction, "the court may look beyond the pleadings and view any evidence submitted").

A motion to dismiss under Rule 12(b)(6) similarly requires the court to construe the facts and draw inferences in the plaintiff's favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). 12(b)(6) motions, however, require this Court to consider only the "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

To survive, the first amended complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the sufficiency of the factual allegations depends upon the complexity of the case, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *Limestone Dev. Corp. v. Vill. Of Lemont*, 520 F.3d 797, 803–04 (7th Cir. 2008).

### III. Analysis

Defendants move to dismiss both counts of Plaintiff's first amended complaint, arguing that: (1) the *Rooker-Feldman* doctrine bars any claim based upon the post-judgment attorney's fees; and (2) neither the fines nor the 2018 attorney's fees constitute "debts" under the FDCPA. [22]. Because the *Rooker-Feldman* doctrine implicates this Court's subject matter jurisdiction, this Court addresses Defendants' argument on that issue first before turning to the merits. *Aljabri v. Holder*, 745 F.3d

816, 818 (7th Cir. 2014); *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 703 (7th Cir. 1998).

### A.    Post-Judgment Attorney's Fees

Defendants argue that the *Rooker-Feldman* doctrine bars Plaintiff's claims regarding the post-judgment attorney's fees because Plaintiff asks this Court to set aside a valid state court order.  [22] at 4; [27] at 6.  This Court agrees.

The doctrine, which comes from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), holds that no federal court except the United States Supreme Court "may review judgments entered by state courts in civil litigation." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014).  The doctrine thus applies when the state court's judgment serves as the source of the injury claimed in federal court.  *Id.* (citing *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293 (2005); *GASH Assocs. v. Rosemont*, 995 F.2d 726, 729 (7th Cir. 1993)).  The doctrine applies not only to claims that were actually raised before the state court, but also to claims that are "inextricably intertwined with state court determinations." *Kelley v. Med-1 Sols., LLC*, 548 F.3d 600, 603 (7th Cir. 2008) (citing *Feldman*, 460 U.S. at 482 n.16).

In determining whether federal claims are "inextricably intertwined" with a state court judgment, "the crucial point is whether the district court is in essence being called upon to review the state-court decision." *Taylor v. Fannie Mae*, 374 F.3d 529, 533 (7th Cir. 2004) (internal quotations omitted).  Ultimately, this determination hinges upon whether the federal claim alleges that the state court judgment caused

the injury, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy. *Sykes v. Cook Cty. Circuit Court Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016). For *Rooker-Feldman* to bar a claim, "there must be no way for the injury complained of by [the] plaintiff to be separated from [the] state court judgment." *Jakupovic v. Curran*, 850 F.3d 898, 903 (7th Cir. 2017) (quoting *Sykes*, 837 F.3d at 742). If a court determines that a claim is inextricably intertwined, it must then determine whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings; and if so, *Rooker-Feldman* bars the federal claim. *Id.*; *see also Kelley*, 548 F.3d at 605.

Here, Plaintiff's claims concerning the post-judgment attorney's fees fall squarely within the contours of the *Rooker-Feldman* doctrine. Plaintiff claims that Defendants violated the FDCPA by trying to collect on the state court's order awarding Defendants post-judgment attorney's fees. [21] at ¶¶ 21–24; [22] at 29. Her claim inextricably intertwines with the state court order on fees because the state court order caused her alleged FDCPA injury. That is, in order for this Court to grant relief on Plaintiff's FDCPA claim, it would have to declare that Plaintiff does not owe the fees the state court ordered Plaintiff to pay. *Rooker-Feldman* precludes this Court from doing so. *See Sykes*, 837 F.3d at 743 (where an "injury is executed through a court order, there is no conceivable way to redress the wrong without overturning the order of a state court."); *Gilbert v. Illinois State Bd. of Educ.*, 591 F.3d 896, 900 (7th Cir. 2010) (holding that the *Rooker-Feldman* doctrine forbids a federal district court from reversing, "as a practical matter," a state appellate court's judgment); *Frances*

*v. Fed. Nat. Mortg. Ass'n*, No. 14 C 00288, 2014 WL 2109892, at *1 (N.D. Ill. May 20, 2014) (*Rooker-Feldman* doctrine barred claims that would "effectively invite this Court to invalidate, or negate, the state court judgment").

Moreover, although *Rooker-Feldman* bars claims only if the federal plaintiff had a reasonable opportunity to raise the relevant issues in the state court proceedings, *Jakupovic,* 850 F.3d at 904, that is the case here. The record demonstrates that Plaintiff did, in fact, have that opportunity by moving to dismiss Defendants' petition for post-judgment attorney's fees in state court. [22] at 30. In that motion to dismiss, Plaintiff argued that the satisfaction and release from the First Lawsuit barred Defendants from obtaining attorney's fees. *Id.* And here, Plaintiff asserts the same theory: that the FDCPA prohibits Defendants from collecting those fees by virtue of the satisfaction and release. [21] at ¶¶ 23–24. Accordingly, this Court finds that Plaintiff had a reasonable opportunity to raise the issues embedded in her FDPCA claims in state court. *Cf. Jakupovic*, 850 F.3d at 904 (the "reasonable opportunity" exception inquiry asks whether state court rules or procedures precluded plaintiff from bringing federal claims in state court); *Holt v. Lake Cty. Bd. of Comm'rs*, 408 F.3d 335, 336 n.1 (7th Cir. 2005) (reasonable opportunity exception unavailable where the plaintiff "has not demonstrated, or even argued, that state court rules or procedures, or difficulties caused by factors independent of the actions of the opposing parties prevented the issues from being raised in the state court proceedings that preceded this action.") (internal quotation marks omitted).

In short, this Court lacks subject matter jurisdiction over Plaintiff's FDCPA claims to the extent based upon the post-judgment attorney's fees, because such claims fall under the *Rooker-Feldman* doctrine. This Court dismisses those portions of Plaintiff's claims without prejudice. *Mains v. Citibank, N.A.*, 852 F.3d 669, 678 (7th Cir. 2017) (dismissal "pursuant to *Rooker-Feldman*" must be without prejudice).

### B. Fines

Defendants also move to dismiss Plaintiff's claims based upon the fines Wolcott levied against her, arguing that they do not constitute consumer "debts" under the FDCPA. [22] at 8–9. To state a claim under the FDCPA, Plaintiff must identify a cognizable consumer "debt." *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579–80 (7th Cir. 2019).

The FDCPA defines a "debt" as

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). This provision "limits its reach to those obligations to pay arising from *consensual* transactions, where parties negotiate or contract for *consumer-related goods or services*." *Spiegel v. Kim*, 952 F.3d 844, 846 (7th Cir. 2020) (quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997)).

Here, Plaintiff claims that Defendants attempted to collect on fines she owed Wolcott. [21] at ¶¶ 26–37. A fine, however, does not constitute a "debt" under the

FDCPA because it "does not stem from a consensual transaction." *Gulley v. Markoff & Krasny*, 664 F.3d 1073, 1075 (7th Cir. 2011). The *Gulley* court observed that this holding extends to all types of fines, including parking tickets, traffic violation tickets, penalties for overdue library books, and importantly, fines levied by a homeowners' association. *Id. See also, e.g.*, *Omran v. Beach Forest Subdivision Ass'n*, No. 12-10116, 2012 WL 1676688, at *3 (E.D. Mich. May 11, 2012) (fines assessed by homeowners' association did not qualify as "debt" under the FDCPA); *Durso v. Summer Brook Pres. Homeowners Ass'n*, 641 F. Supp. 2d 1256, 1265 (M.D. Fla. 2008) ("The HOA fines were penalties against Plaintiff for violations of HOA rules and were not the result of a business dealing or an obligation to pay for goods or services."). Accordingly, this Court dismisses Plaintiff's FDCPA claims to the extent she bases them upon the allegedly improper fines assessed by Wolcott.

### C.    2018 Attorney's Fees

Finally, Defendants move to dismiss Plaintiff's claims concerning the 2018 attorney's fees. [22] at 11–13. Plaintiff alleges that, throughout 2018, Defendants charged and attempted to collect legal fees without filing a court claim or following appropriate Wolcott procedure. [21] at ¶¶ 38–50.

Defendants argue that these fees do not constitute "debts" because Section 9.2 of the Illinois Condominium Property Act authorizes Defendants to collect them. [27] at 9. Section 9.2 provides:

> (a) In the event of any default by any unit owner, his tenant, invitee or guest in the performance of his obligations under this Act or under the declaration, bylaws, or the rules and regulations of the board of managers, the board of managers or its agents shall have such rights

10

and remedies as provided in the Act or condominium instruments including the right to maintain an action for possession against such defaulting unit owner or his tenant for the benefit of all the other unit owners in the manner prescribed by Article IX of the Code of Civil Procedure [the Forcible Entry Act].

(b) Any attorneys' fees incurred by the Association arising out of a default by any unit owner, his tenant, invitee or guest in the performance of any of the provisions of the condominium instruments, rules and regulations or any applicable statute or ordinance shall be added to, and deemed a part of, his respective share of the common expense.

765 ILCS 604/9.2. Relying upon Section 9.2, Defendants assert that Plaintiff defaulted on her payments of condominium assessment fees, and thus the statute required them to collect any attorney's fees they incurred as a result of Plaintiff's default. [27] at 8–10. Defendants then reason that, because such fees arise from a statutory mandate—as opposed to a consensual consumer transaction—they do not qualify as "debt" under the FDCPA. *Id.*; *see also Spiegel*, *supra*, at 846.

To be sure, if the record demonstrated that: (1) Plaintiff defaulted; and (2) Defendants' charges arose from Plaintiff's default, this Court might agree that Plaintiff's claims do not identify a cognizable debt. *See, e.g.*, *McCarter v. Kovitz Shifrin Nesbit*, 6 F. Supp. 3d 797, 803 (N.D. Ill. 2013) (dismissing FDCPA claim based upon a collection letter seeking to collect attorney's fees along with condominium assessments, reasoning that "Illinois law . . . not only *permits,* but *requires* that attorneys' fees incurred by the Association that arise out of a default be added to a unit owner's share of the common expense."). But the current record does not allow this conclusion. Rather, the complaint and its exhibits show merely that Defendants charged Plaintiff attorney's fees in ten line items, [1-1] at 4; and Defendants offer

nothing (apart from their assertions) to explain how they incurred the complained-of fees, nor why they actually charged those fees to Plaintiff.

Absent these facts, this Court cannot determine whether Defendants, in fact, were authorized by Section 9.2 to charge those fees to Plaintiff. Thus, at this stage in the proceedings, this Court rejects Defendants' argument that such fees do not constitute FDCPA "debts."

## IV.     Conclusion

This Court grants in part and denies in part Defendants' motion to dismiss [22]. Counts I and II as to the post-judgment attorney's fees are dismissed without prejudice for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. Counts I and II as they apply to the fines are dismissed with prejudice. Counts I and II stand only as to Plaintiff's allegations concerning the 2018 attorney's fees.

Dated:  June 24, 2020

Entered:

John Robert Blakey
United States District Judge
