UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KELLY SULLIVAN, | |
| Plaintiff, | Case No. 19 CV 4637 |
| v. | Judge John Robert Blakey |
| THOMAS G. GARDINER, PC, d/b/a GARDINER KOCH WEISBERG & WRONA, et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kelly Sullivan owns a condominium unit that is part of the Wolcott Diversey Condominiums. [98] ¶ 1. Defendants Thomas G. Gardiner, PC (Gardiner), d/b/a Gardiner Koch Weisberg & Wrona, and Vincent Lavieri (Lavieri), an attorney who is of counsel to Gardiner, represent the Wolcott Diversey Condominium Association (the Association). *Id.* ¶ 3. Plaintiff sued Defendants alleging that Defendants violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692a–1692k, by misrepresenting debts owed by Plaintiff to the Association and by attempting to collect unauthorized debts. [21]. All parties now move for summary judgment. [96]; [114]. For the reasons stated below, this Court grants summary judgment in favor of Defendants on all counts.

### I. Relevant Facts and Procedural History

The Declaration of Condominium Ownership and Easements, Restrictions and Covenants and Declaration of Bylaws for Wolcott Diversey Condominiums (the

1

Declaration) governs all Wolcott condominium units. [98-1] at 25–26, 66–67. The Declaration dictates the rights and responsibilities of unit owners regarding common elements of Wolcott and includes bylaws with procedures for levying and collecting assessments, imposing charges, and "after notice and an opportunity to be heard," levying fines for violations of the Declaration and associated rules and regulations. *Id.* at 46, 67. The Declaration vests administration of the property in a Board of Directors (the Board). *Id.* at 62. Cagan Management Group, Inc. (Cagan) creates and maintains the account ledgers for Wolcott. [127] at ¶ 35.

### A. The 2017 State Court Lawsuit

In 2017, the Association sued Plaintiff in the Circuit Court of Cook County for her failure to pay common expenses, late fees, fines, and other charges (the 2017 state court lawsuit). [98-1] at 278. On December 13, 2017, the circuit court filed an order and judgment against Plaintiff in her previous suit against the Association. *Id.* at 280. The judgment of $10,055.34 included unpaid assessments, fines, late fees, earlier attorneys' fees, and other expenses. *Id.* After entry of the judgment, the Association filed its Petition for Award of Post-Judgment Attorneys' Fees, which the circuit court granted via an order entered on May 11, 2018. *Id.* at 236, 278–79.

On June 14, 2018, Plaintiff filed a Motion for Leave to File Late Notice of Appeal. *Id.* at 241–45. On July 10, 2018, the Illinois Appellate Court denied the motion with respect to the December 2017 order, but granted it with respect to the May 2018 order. *Id.* at 292–93. Plaintiff then filed a Motion to Reconsider the July 10 order on July 26, 2018, which the appellate court subsequently denied on August

1, 2018. *Id.* at 295–300, 312. On October 2, 2018, the Association filed a Motion to Dismiss Appeal for Want of Prosecution. *Id.* at 314–17. The Illinois Appellate Court granted the motion to dismiss on October 17, 2018. *Id.* at 319.

### B. Plaintiff's 2018 Violations of the Declaration and Related Fees

On April 18, 2017, Lavieri, as the attorney for the Association and at the Association's request, wrote to Plaintiff regarding Plaintiff's alleged interference with landscaping of the common elements. [98-1] at 157–62. The letter placed Plaintiff on notice that she was not to water plants within the common elements nor give instructions to the landscaping company responsible for the common elements. *Id.* at 157. The letter cited Article XII, § H(15) of the Declaration, which states that "the Board shall have the exclusive right and duty to acquire," among other services and goods, the "landscaping" and "gardening" of the common elements. *Id.* at 66–68, 157. Plaintiff did not respond to this letter. [117] ¶ 15. At no point did the Board authorize Plaintiff to water, landscape, or direct landscaping. *Id.* ¶¶ 16–17.

On May 8, 2018, the Association notified Plaintiff of ten alleged violations related to watering and landscaping between March 28, 2018, and May 7, 2018, in violation of the Declaration. [98-1] at 174–219. On August 7, 2018, the Board held a hearing and found Plaintiff guilty of nine of the ten violations. [98-1] at 221–22. The Board levied $150.00 fines for eight of those violations and levied a fine of $300.00 for the remaining violation. *Id.* Plaintiff did not pay these fees. [117] ¶ 70. Gardiner sent the Association, via Cagan, Invoices Nos. 134633, 135368, and 136010 with attorney's fees related to these Board proceedings. [116-8] at 10, 14–16. Cagan then

3

posted these fines and attorney's fees to Plaintiff's ledger for July 3, 2018, and August 3, 2018. [116-9] at 7.

On August 15 and August 22, 2018, Plaintiff sent emails to Lavieri challenging the attorney's fees assessed to her account. [98-1] at 141, 143, . The August 15 email demanded information related to "illegal violations." *Id.* at 141. The August 22 email requested information related to the attorney's fees on Plaintiff's ledger. *Id.* at 143. Plaintiff received no response from Lavieri to the August 15 email and in response to her August 22 email received only an email reply from Lavieri requesting that she cease communicating with him. [117] ¶¶ 6, 8–9. Plaintiff had no oral communications with Lavieri or Gardiner regarding the attorney's fees at issue. *Id.* ¶ 10.

On August 28, 2018, Lavieri, on behalf of the Association, sent Plaintiff a Notice and Demand for Possession stating that Plaintiff was in default of her obligations to the Association and that she owed the Association $9,674.42. [116-9] at 1–4. Lavieri attached a copy of Plaintiff's ledger from January 1, 2015, through August 28, 2018. *Id.* at 5–7. The notice included language stating it was "an attempt to collect a debt . . . pursuant to the Fair Debt Collection Practices Act." *Id.* at 3. The notice also stated it was a communication "from a debt collector." *Id.*

On December 20, 2018, the Board sent Plaintiff a letter informing her that the Board had removed holiday decorations that Plaintiff had placed on Wolcott's common elements. [98-1] at 230. The letter stated that Plaintiff and her attorney had previously been made aware that the decorations violated the Association's

4

House Rules § 6A. *Id.* The Association's rules prohibit the placement, without Board approval, of outdoor holiday decorations on the common elements or, aside from miniature non-blinking Tivoli lights and green garland, on patios and balconies. [98-1] at 227. At no point did the Board approve Plaintiff's placement of holiday decorations. [117] ¶ 23.

The Board did not conduct a hearing related to Plaintiff's alleged holiday decorating violations, and, accordingly, made no determination of guilt and levied no fines for this alleged violation. [127] ¶ 16. The Board tabled the hearing for an undetermined future date. *Id.* Plaintiff was not charged for preparation of the December 20, 2018 letter itself, but Cagan did post $6.67 to Plaintiff's ledger for certified mailing of the letter. [116-10] at 6; [117] ¶ 28. Defendants' Invoice Nos. 137870 and 138447 refer to work regarding the decoration dispute. [116-8] at 23–24. Cagan posted the $112.50 fee from Invoice No. 138447 to Plaintiff's ledger. [116-10] at 6.

  **C. The 2019 State Court Lawsuit**

On January 16, 2019, Lavieri emailed Plaintiff, via her then counsel, Scott Pointner, attaching a copy of Plaintiff's ledger, also dated January 16, 2019. *Id.* at 2–7. The email stated Cagan had posted "fees relating to the appeal dismissed pursuant to our motions, collection and enforcement of the Declaration," along with "the supplemental fee award and post judgment interest" to Plaintiff's ledger. *Id.* at 2. In the email, Lavieri stated that the Board would initiate legal proceedings if Plaintiff did not pay the outstanding amounts noted on the ledger, totaling

5

$16,437.91, before the end of the following week. *Id.* Defendants sent an updated ledger to Pointner via email on January 18, 2019, showing that Plaintiff's outstanding balance increased to $16,969.91 after a payment check from Plaintiff to the Association bounced. [116-11] at 2.

On February 26, 2019, the Association filed an Eviction Complaint against Plaintiff in the Circuit Court of Cook County (the 2019 state court lawsuit). [98-1] at 321–22. The Association claimed damages of $19,064.48, "plus assessments and other charges accruing on and after the date of filing, attorney's fees, expenses, post-judgment interest on prior judgment and court costs." *Id.* at 321.

Lavieri testified that, before filing the Eviction Complaint, he reviewed Plaintiff's ledger and discovered that it did not reflect the November 2018 invoices for legal fees. [126-1] at 54. Cagan then included these fees on an October 2020 copy of Plaintiff's ledger. [98-1] at 377. This 2020 ledger was generated at Lavieri's request during discovery for the case now before this Court and was sent only to Plaintiff's current counsel, not to Plaintiff or Pointner. [126-1] at 54–55. Lavieri also testified that the remaining difference between the January 18 ledger amount and the amount of damages sought in the February 2019 eviction complaint resulted from charges accruing after January 18, 2019. *Id.* at 54. The 2020 ledger also indicated an outstanding balance as of December 13, 2017 that was $120 higher than previous ledgers indicated, [127] ¶ 32, though Lavieri testified Defendants have never sought to collect this additional $120.00 on behalf of the Association, [126-1] at 55.

6

As a result of the COVID-19 pandemic, the 2019 state court lawsuit has incurred some natural delays. [117] ¶ 58.

### D. The FHA Lawsuit

On June 10, 2019, Plaintiff filed suit against the Association, Cagan, several members of the Board, and Lavieri in this District. [98-1] at 323–68; *see also Sullivan v. Wolcott Diversey Condominium Association* (the FHA lawsuit), No. 19-CV-3856 (N.D. Ill. June 10, 2019), [1]. [98] ¶ 60. In her complaint, Plaintiff alleged violations of the Fair Housing Act, 42 U.S.C. §§ 3601–3619, the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/1–10, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1–12; violations of certain community instruments; breach of fiduciary duty; negligent infliction of emotional distress; failure to produce records; and improper fee shifting. [98-1] at 324–68.[1] Plaintiff sought damages, various equitable remedies, and a declaratory judgment. *Id.* Plaintiff alleged that Lavieri "was and is an Illinois attorney engaged in debt collection for the Association," and she based her claims, in part, upon Lavieri's "fraudulent and improper collections actions." *Id.* at 324, 326. Plaintiff included factual allegations regarding Lavieri's communications with her, fees that Lavieri generated while working on matters related to Plaintiff, and Cagan's placement of those fees onto her ledger, as well as Lavieri's subsequent efforts to collect those fees (and other fees imposed by the Association) through litigation that Cagan posted to

---

[1] With respect to Lavieri, Plaintiff alleged only that he violated community instruments (Count VI) and the Illinois Consumer Fraud and Deceptive Business Practices Act (Count IX).

7

her ledger and Lavieri's efforts to collect those fees, and charges posted to her ledger by Cagan that relate to Lavieri's attorney's fees. *See, e.g., id.* at 330–34, 341–42, 345–46.

On August 20, 2019, Lavieri moved to dismiss. [117] ¶¶ 61–62. On October 11, 2019, Judge Pacold, to whom that case was assigned, granted Plaintiff leave to amend her complaint and voluntarily dismiss Lavieri from the lawsuit. [98-1] at 370. On November 14, 2019, Judge Pacold entered an order which stated: "By agreement between the parties defendant Vince Lavieri is hereby dismissed with prejudice." [98-1] at 373.

On June 8, 2021, Plaintiff filed an amended complaint asserting a claim against Gardiner, a new defendant in that action, for a purported violation of 42 U.S.C. § 1983. *Sullivan v. Wolcott Diversey Condominium Assoc.*, No. 19-CV-3856 (N.D. Ill. June 8, 2021), [175] ¶¶ 263–278.

### E. Plaintiff's FDCPA Claims

Plaintiff initiated this action on July 10, 2019, [1], and filed an Amended Complaint on September 16, 2019, [21]. Plaintiff seeks recovery under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692a–1692k. [21]. In Count I, Plaintiff alleges that Defendants misrepresented debts owed by Plaintiff. *Id.* In Count II, Plaintiff alleges that Defendants attempted to collect unauthorized debts. *Id.*

Initially, Plaintiff contested the collection of three categories of "debts": (1) post-judgment attorney's fees related to the 2017 state court lawsuit; (2) fines related

to Plaintiff's 2018 violations and alleged violations of the Declaration and bylaws; and (3) miscellaneous attorney's fees Cagan added to her ledger based upon invoices from Defendants. [43] at 2–4. This Court dismissed the claims without prejudice under the *Rooker-Feldman* doctrine with respect to the fees related to the 2017 state court lawsuit and dismissed the claims with prejudice with respect to the fines. *Id.* at 9, 12.

This Court left standing the claims relating to the "2018 attorney's fees":

(1) July 3, 2018, fees related to Invoice No. 134633;

(2) July 5, 2018, fees related to Invoice No. 134667;

(3) August 3, 2018, fees related to Invoice No. 135366;

(4) August 3, 2018, fees related to Invoice No. 135368;

(5) September 5, 2018, fees related to Invoice No. 136010;

(6) September 5, 2018, fees related to Invoice No. 136011;

(7) October 2, 2018, fees related to Invoice No. 136669;

(8) October 2, 2018, fees related to Invoice No. 136671;

(9) January 11, 2019, fees related to Invoice No. 138447; and

(10) January 11, 2019, fees related to "Certified Mailing regarding complaint."

*Id.* at 3–4, 10–12. In so doing, this Court noted that, as of June 24, 2020, Defendants had offered "nothing (apart from their assertions) to explain how they incurred the complained-of fees, nor why they actually charged those fees to Plaintiff." *Id.* at 11–12. Each of these referenced invoices appears on GKWW letterhead addressed to the Association, care of Cagan. [116-8]. Lavieri testified that Gardiner billed these

9

invoices to the Association. [98-1] at 116–17. Time entries on the face of the invoices indicate the following:

- Invoice No. 134633 concerns time spent reviewing Plaintiff's Notice of Appeal in the 2017 state court lawsuit as well as a teleconference with Julie Gordon, a member of the Board, regarding Plaintiff's landscaping violations. [116-4] at 185.

- Invoice No. 134667 concerns time spent reviewing and responding to Plaintiff's Notice of Appeal in the 2017 state court lawsuit. *Id.* at 186.

- Invoice No. 135366 concerns time spent checking on the progress of Plaintiff's Notice of Appeal in the 2017 state court lawsuit and time spent reviewing and preparing a response to Plaintiff's Motion to Reconsider in that case. *Id.* at 188.

- Invoice No. 135368 concerns time spent addressing Plaintiff's request for a continuance in the 2017 state court lawsuit. *Id.* at 14–15. It also concerns preparations for the August 7, 2018, hearing to address Plaintiff's violations of the Declaration and Association bylaws. *Id.* at 189–90.

- Invoice No. 136010 concerns time spent preparing and revising a letter to Pointner regarding Plaintiff's violations, attending the August 7, 2018, hearing, and communicating with Plaintiff's attorney regarding that hearing. *Id.* at 191.

- Invoice No. 136011 concerns time spent communicating with Cagan regarding the May 11, 2018, order awarding post-judgment attorney's fees in the 2017 state court lawsuit. *Id.* at 192. It also concerns time spent preparing the August 28, 2018 Notice and Demand for Possession. *Id.*

- Invoice No. 136669 concerns time spent teleconferencing with an appeals clerk to determine whether Plaintiff requested preparation of Record on Appeal in the 2017 state court lawsuit. *Id.* at 193.

- Invoice No. 136671 concerns time spent corresponding with the Board regarding the Notice and Demand for Possession. *Id.* at 194.

- Invoice No. 138447 concerns time spent reviewing and responding to emails from Pointner regarding Plaintiff's alleged holiday decorating violation. *Id.* at 199.

The fee for Certified Mailing, listed among the "2018 attorney's fees" concerns the cost of mailing the December 20, 2018, letter alleging a holiday decorating violation, [117] at ¶ 28, and is not among the GKWW invoices, [116-8].

Defendants now seek summary judgment on Plaintiff's unauthorized attorneys' fees claims, *see* [96], and Plaintiff cross moves for summary judgment, *see* [114].

## II. Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). The non-moving party bears the burden of identifying the evidence creating an issue of fact. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021–22 (7th Cir. 2018). To satisfy that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Barnes v. City*

*of Centralia*, 943 F.3d 826, 832 (7th Cir. 2019). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

### III. Analysis

#### A. Standing

A federal court must first determine whether a plaintiff has standing to sue, as "Article III limits federal courts to resolving 'Cases' and 'Controversies.'" *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021) (quoting U.S. Const. art. III, § 2). A plaintiff has standing only if the she has "suffered an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). An injury in fact must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (quoting *Lujan*, 504 U.S. at 560).

An FDCPA violation "does not necessarily cause an injury in fact." *Markakos*, 997 F.3d at 780 (citing *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020)). Accordingly, to have standing, an FDCPA plaintiff must allege not just a procedural violation but a concrete harm. *Lavallee v. Med-1 Sols., LLC*, 932 F.3d 1049, 1053 (7th Cir. 2019). A collection suit proceeding in the face of an alleged violation can constitute a concrete harm. *See id.*

12

Here, Defendants argue Plaintiff lacks standing because she "has not alleged that she paid any money as a result of the claimed FDCPA violation" or "come forward with" other "evidence of an injury-in-fact." [129] at 1–3. In making this argument, Defendants rely heavily upon *Marakos*, where the Seventh Circuit held that an FDCPA plaintiff "failed to show an injury in fact for a commonsense reason: she has not paid a dime, and she has properly disputed her debt." 997 F.3d at 782.

Here, however, the 2018 attorney's fees at issue in this case appear on Plaintiff's ledger and, thus, resulted in her alleged default on the payment of that ledger's balance that she now defends against in the 2019 state court lawsuit. Plaintiff has also made payments toward the total ledger balance that includes these fees. [116-10] at 6. These undisputed facts suffice to establish a particularized and concrete harm for the purposes of standing. And here that injury remains traceable to Defendants' conduct and redressable by a favorable judicial decision. Plaintiff thus has standing to sue.

## B. Claim Preclusion

Although Plaintiff has standing to sue, the doctrine of res judicata, or claim preclusion, bars her claims against Lavieri. Claim preclusion bars litigation of certain claims that could have been raised in an earlier suit "when three criteria are met: (1) identity of parties, (2) identity of claims, and (3) a prior final judgment on the merits." *Daza v. State*, 2 F.4th 681, 683 (7th Cir. 2021).[2] To interpret "the scope of a

---

[2] This Court applies federal common law, as opposed to the res judicata law of Illinois, because the earlier decision at issue here, "was rendered by a federal court," not a state court, *Daza*, 2 F.4th at

13

claim for purposes of preclusion," courts do not limit themselves "to the words in the complaint," but instead ask if "the two claims 'arise from the same transaction . . . or involve a common nucleus of operative facts.'" *Id.* at 684 (alteration in original) (quoting *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1595 (2020)). Any matter that falls "within that common nucleus, whether or not actually raised" in the first suit, "falls within the scope of the claim and is thus subject to claim preclusion in a later case." *Id.*

In assessing claim preclusion here, this Court looks to the FHA lawsuit. Plaintiff does not dispute an identity of parties between the two actions: both suits named Lavieri as a defendant. [21]; [98-1] at 324. And both actions arise from a common nucleus of operative facts: the Association added a series of charges to Plaintiff's ledger, and Lavieri subsequently attempted to recover these amounts from Plaintiff. Ultimately, both suits center on the Association's addition of charges to Plaintiff's ledger and the Association's subsequent efforts, through Lavieri, to collect that ledger balance from Plaintiff. [21] ¶¶ 11, 14, 23–25, 37, 38–51; [98-1] at 323, 331–35, 338, 344, 346, 354. And in both suits, the amounts added to Plaintiff's ledger reflected fines levied by the association for Plaintiff's violations of the Declaration and Lavieri's fees for time spent handling the violations and his subsequent collection efforts. [21] ¶¶ 21–22, 33–35, 38; [98-1] at 331–35, 338, 344, 346, 354.

---

683, and did not result from the "exercise of a federal court's diversity jurisdiction over state-law claims," *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627 (7th Cir. 2020).

14

The fact that Plaintiff proceeds here under a new legal theory (by bringing her claims under the FDCPA) changes nothing about the identity of claims because she could have made these claims in the FHA lawsuit. *United States ex rel. Conner v. Mahajan*, 877 F.3d 264, 271 (7th Cir. 2017) (noting that claim preclusion bars "litigating claims which were, or could have been, decided in a prior suit, even if the fresh attempt relies on 'marginally different theories'" (quoting *Maher v. FDIC*, 441 F.3d 522, 527 (7th Cir. 2006)).

Lastly, with respect to Lavieri, the FHA lawsuit resulted in a final judgment on the merits. In the FHA lawsuit, the district court issued an order, pursuant to "an agreement between the parties," that dismissed "defendant Vince Lavieri . . . with prejudice." [98-1] at 373. That order constitutes "a final judgment on the merits." *See Kilburn-Winnie v. Town of Fortville*, 891 F.3d 330, 334 (7th Cir. 2018); *see also Brooks-Ngwenya v. Indianapolis Pub. Sch.*, 564 F.3d 804, 809 (7th Cir. 2009) (holding that a dismissal with prejudice based upon a settlement agreement "is a final judgment for purposes of claim preclusion").

Because claim preclusion prevents Plaintiff from proceeding on the claims she asserts against Lavieri in this case, this Court grants summary judgment in favor of Lavieri on both counts of her complaint.

### C. Claim Splitting

Just as the doctrine of claim preclusion bars Plaintiff's claims against Lavieri, the doctrine of claim splitting bars her claims against Gardiner. This doctrine ensures that plaintiffs do not "maintain two actions on the same subject in the same

15

court, against the same defendant at the same time." *Elmhurst Lincoln-Mercury, Inc. Emps. 401(k) Profit Sharing Plan & Tr. v. Mears*, 215 F. Supp. 3d 659, 665 (N.D. Ill. 2016) (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000)). The doctrine applies when "the first two elements of claim preclusion are present," namely an identity of parties and an identity of claims, "but final judgment has not yet been entered in the first suit." *Roumann Consulting Inc. v. Symbiont Constr., Inc.*, No. 18-C-1551, 2019 WL 3501527, at *6 (E.D. Wis. Aug. 1, 2019).

As discussed above, both this suit and the FHA suit arise from a common nucleus of operative facts and, thus, share an identity of claims. With respect to Gardiner, both actions share an identity of parties, as Plaintiff named Gardiner as a defendant both here and in the earlier-filed FHA lawsuit (though she spells his name differently in the latter suit). *See* [21]; *Sullivan v. Wolcott Diversey Condominium Assoc.*, No. 19-CV-3856 (N.D. Ill. June 8, 2021), [175]. And Gardiner remains a party to the FHA lawsuit as, to date, Judge Pacold has not entered judgment on the merits. As a result, the doctrine of claim splitting bars Plaintiff's claims here against Gardiner. Accordingly, this Court grants summary judgment in favor of Gardiner on both counts.

## IV. Conclusion

For the reasons explained above, this Court grants Defendants' motion for summary judgment [96] and denies as moot Plaintiff's cross-motion for summary judgment [114]. The Clerk is directed to enter judgment in Defendants' favor on both

remaining counts of Plaintiff's complaint. All pending dates and deadlines are stricken. Civil case terminated.

Dated: March 25, 2022                          Entered:

                                                   John Robert Blakey
                                                   United States District Judge